MISSOURI, K. & T. RY. CO. OF TEXAS v. CLEMENT GRAIN CO. (No. 5935.)

(Court of Civil Appeals of Texas. Austin. Oct. 7, 1918. Rehearing Denied Nov. 6, 1918.)

1. CARRIERS ⟨⟩69(5)—BILL OF LADING—BONA FIDE PURCHASER—FINDINGS.

    Facts as found by the court *held* to show that plaintiff was an innocent holder for value of a bill of lading for a car of corn.

2. CARRIERS ⟨⟩59 — BILLS OF LADING — DELAYED SHIPMENT—LIABILITY TO BONA FIDE PURCHASER.

    Where a carrier, in accordance with its custom issued a bill of lading, complying with Ver-

non's Sayles' Ann. Civ. St. 1914, arts. 715, 716, in exchange for initial carrier's bill of lading routing over its lines to destination, and same was transferred to an innocent purchaser for value, it became incontestable under article 719, and the carrier was liable for loss of shipment by delayed transportation, although it did not receive shipment until long after issue of bill of lading, because routing was changed without its knowledge.

Appeal from District Court, McLennan County; E. J. Clark, Judge.

Suit by B. E. Clement, doing business as the Clement Grain Company, against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

W. E. Spell and G. H. Penland, both of Waco, for appellant. Davis & Cocke, of Waco, for appellee.

KEY, C. J. This is a suit by B. E. Clement for the value of a car of corn shipped from St. Joseph, Mo., to Temple, Tex. There was no jury in the case, and the trial court rendered judgment for the plaintiff, and the defendant railway company has appealed. The plaintiff was doing business in the name of Clement Grain Company.

The judge's findings of fact, which are not challenged by appellant, are as follows:

"(1) I find that on February 28, 1912, plaintiff, B. E. Clement, doing business at Waco, Tex., under the name of Clement Grain Company, purchased from Walker Grain Company, of Ft. Worth, Tex., a car of No. 3 white corn, 60,000 pounds, to be delivered at Temple, Tex., at an agreed price of 80½ cents per bushel, inclusive of freight charges to Temple, Tex.

"(2) That on the same day Walker Grain Company, pursuant to said contract of sale, indorsed and attached to a demand draft on plaintiff for $703.50 (being the amount of agreed purchase price less freight charges) a bill of lading issued by defendant, Missouri, Kansas & Texas Railway Company of Texas, at Ft. Worth, Tex., on February 28, 1912, authenticated according to law, and acknowledged receipt at Ft. Worth, Tex., from said Walker Grain Company of 60,000 pounds of bulk corn in apparent good order, consigned to order of Walker Grain Company at Temple, Tex., notify Clement Grain Company at Temple, Tex., car initials and number recited to be No. 65190 B. & M. There were also attached to said demand draft on plaintiff official weight and grade certificates dated February 24, 1912, issued, respectively, by St. Joseph, Mo., Board of Trade and Missouri State Grain and Inspection Department at St. Joseph, Mo., showing the corn contained in said car was of contract weight and grade.

"(3) The bill of lading above referred to as issued by defendant railway company also bore the notation, 'Issued in lieu of C. G. W. St. Joseph, B/L of 2/24.'

"(4) I find that the next day, to wit, March 1, 1912, said demand draft, with indorsed bill of lading and certificates attached, was presented to plaintiff and paid by him, and that in paying same plaintiff relied upon the bill of lading and accompanying certificates, and acted in good faith and without notice of any vice or defect therein.

"(5) The ordinary running time of a car of corn from St. Joseph, Mo., to Ft. Worth, Tex., is about five days, and the ordinary running time from Ft. Worth to Temple, Tex., would be twenty-four hours.

"(6) No. 3 white corn, such as that involved

in this shipment, at the season in question, would not begin to deteriorate before ten or fifteen days after it was loaded into cars.

"(7) The market value at Temple, Tex., of corn of the grade involved in this controversy, on or about March 1, 1912, was 80½ cents a bushel delivered there, or $703.50 for car of 60,000 lbs., over and above freight charges.

"(8) I find further that the car of corn in question was not in fact in Ft. Worth, Tex., on February 28, 1912, when the bill of lading transferred to plaintiff was issued by defendant railway company; that on February 24, 1912, car No. 65190, B. & M., the car described in said B/L, containing 60,000 lbs. of No. 3 white corn, officially weighed and inspected, was delivered to Chicago & Great Western Railway at St. Joseph, Mo., by Burk Grain company, consigned to shipper's order, Sherman, Tex., notify Walker Grain Company at Ft. Worth, Tex., the bill of lading specifying routing as follows: C. & G. W. to Kansas City; thence over rails of the M., K. & T. Ry. Co., to Sherman, Tex.

"(9) The car of corn left St. Joseph, Mo., on February 27th, over line of C. & G. W. Ry. Co., arriving at Kansas City on the same day, where, upon request of Walker Grain Company, said Burk Grain Company had the routing changed so that said car should go via Santa Fé Ry. Co. from Kansas City instead of over M., K. & T. Ry. The car was thence transported over various lines of the Santa Fé system to Dallas, Tex., where on March 6, 1912, it was delivered by G., C. & S. F. Ry. to the H. & T. C. Ry. Co., by which last-named railway it was carried to Sherman, arriving there at noon on March 12, 1912, postal card notice being given on that date by the railway agent to the Walker Grain Company, Ft. Worth, Tex., of the arrival of the car at Sherman.

"(10) The car remained at Sherman in possession of the H. & T. C. Ry. Co. until April 13, 1912, when, under authority of freight claim agent of said railway company, it moved to Dallas over its line, and on April 15th was delivered by it to defendant, M., K. & T. Ry. Co., by whom it was carried to Temple, Tex., arriving there on same day.

"(11) While the car remained in Sherman it was inspected twice, the first time on April 8th, when same was found hot and musty, and the second time on April 10th, and the corn found to be musty, partly decayed, hot, and stuck together in cakes, and not in a merchantable condition.

"(12) Upon the arrival of the corn at Temple it was carefully inspected, and the corn found very hot and rotten, and was wholly worthless; whereupon Crouch Grain Company, to whom plaintiff had two or three days after his own purchase contracted to sell same at the prevailing market price, refused to accept same or pay plaintiff for same, and the value of the car was a total loss to plaintiff.

"(13) When plaintiff purchased the car of corn from the Walker Grain Company and paid the draft he did not, nor did he at any time up to the arrival of the car at Temple, know where the car of corn was, otherwise than as represented by the bill of lading, upon which he relied in paying the draft.

"(14) I find that in February, 1912, it was a general custom in the office of the commercial agent of defendant railway company at Ft. Worth, Tex., to issue what was known as exchange bills of lading in lieu of other bills of lading that had been issued by other roads, where the original bill of lading showed routing via line of defendant railway, although the cars affected might not have actually come into possession of the defendant railway company, the original bill of lading being always surrendered before the exchange bill of lading was issued.

"(15) I find that Walker Grain Company, on February 28, 1912, delivered to the commercial

agent of the defendant, M., K. & T. Ry. Co. of Texas, at Ft. Worth, Tex., the original bill of lading issued by Chicago & Great Western Railway Company at St. Joseph, Mo., above referred to, covering the car of corn in controversy, showing routing C. & G. W. Ry. to Kansas City, care of M. K. & T. Ry. Co., with request that the car be diverted from Sherman, Tex., to the order of the Walker Grain Company, Temple, Tex., 'notify Clement Grain Company, Temple, Tex.' Bill of lading properly executed, as prescribed by Texas statutes, was accordingly issued and delivered to Walker Grain Company by defendant, M., K. & T. Ry. Co. of Texas, as requested, in form of ordinary order bill of lading, dated Ft. Worth, Tex., February 28, 1912, which was the same bill of lading indorsed in blank by Walker Grain Company, and on same day attached to draft on plaintiff as above set forth. The original bill of lading was retained by the railway agent.

"(16) I further find that at the time said exchange bill of lading was issued defendant M., K. & T. Ry. Co. of Texas had no knowledge or notice that Walker Grain Company had already diverted the car of corn at Kansas City to the line of Santa Fé Railway Company, nor did plaintiff know of such fact at the time he paid the draft drawn on him for the purchase price of the car, or at any other time before said car reached Temple.

"(17) I find that the market value at Temple, Tex., of corn of the grade involved in this controversy, continued to advance from March 1, 1912, up to date of arrival of car in Temple.

"(18) I find that, two or three days after his own purchase from Walker Grain Company, plaintiff contracted to sell the same car of corn to Crouch Grain Company of Temple, who refused to accept same when the car arrived at Temple, on account of its worthless condition; plaintiff also declined to accept the car, and plaintiff has never collected the price of the car from Crouch Grain Company, nor collected back any money, nor had any allowance from or adjustment with Walker Grain Company on account of it."

### Opinion.

As conclusions of law the learned trial judge held: (1) That the plaintiff was an innocent holder for value of the bill of lading issued at Ft. Worth, Tex., February 28, 1912, by appellant, and that by force of statutory law it was incontestable as to the matters and things therein set forth; and (2) that appellant had constructive possession of the car of corn when it issued the bill of lading referred to.

[1, 2] On the first point we concur with the trial court, and express no opinion as to the second question. 1 Vernon's Sayles' Civil Statutes, arts. 715, 716, 719.

The statute referred to prescribes the requisites of a bill of lading, and requires common carriers, except express and pipe line companies, to issue to shippers bills of lading in conformity with the statute. Article 719 of that statute reads as follows:

"Each and every bill of lading issued by the authorized agent of any carrier or receiver thereof, affected by the provisions of this chapter, shall be deemed and held to be the act and deed of such carrier or receiver thereof, and the principal shall be liable thereon in accordance with the terms thereof. When any such bill of lading shall be validated, authenticated, or certified in accordance with the rules and regulations herein provided for, and as may be prescribed by the railroad commission in accordance with the provisions of this chapter, and in the hands of an innocent holder for value, it shall be incontestable as to the matters and things therein set forth."

The facts found by the trial judge and disclosed by the testimony show that the plaintiff in this case was an innocent holder for value of the bill of lading issued by appellant on the 28th day of February, 1912; and although the shipment did not, in fact, come into its possession until a considerable time thereafter, and although it may have exercised proper diligence to deliver the same after it came into its possession, nevertheless as it was stated in the bill of lading that it was then in possession of the property, and as appellee relied upon that statement when he bought and paid for the car of corn, he was an innocent holder for value; and therefore by force of the statute the bill of lading was incontestable, and it constituted no defense for appellant to show that, as a matter of fact, it did not at that time have possession of the property referred to, and exercised due care and diligence after it received it. Nor does it make any difference that appellant was ignorant of the fact that the routing of the shipment had been changed, and believed that the property was at the time referred to in appellant's possession. It could have ascertained that the routing of the shipment had been changed and that the property was not in its possession before it issued the bill of lading. If it had been shown that appellant was misled by some statement made by appellee, and thereby caused to believe that the routing had not been changed, and that the property was in appellant's possession, a different question would be presented; but no such state of facts was shown. On the contrary, the proof shows that, when appellee bought the car of corn and paid for it, he had no knowledge of the fact that it was not in possession of appellant at the time the bill of lading referred to was issued.

Some other questions are presented and decided against appellant.

Judgment affirmed.