CHICAGO & G. W. RY. CO. et al. v. PLANO MILLING CO. et al.   (No. 2114.)

(Court of Civil Appeals of Texas. Texarkana. April 23, 1919.   On Motion of Missouri, K. & T. Ry. Co. of Texas for Rehearing, July 3, 1919.  Dissenting Opinion, July 5, 1919.)

1. CARRIERS ⇐108—CARRIER ISSUING BILL OF LADING TO S. ON CHANGING ROUTING AT S. NOT·INSURER OF GOOD CONDITION AT P.

A carrier which never undertook to transport a carload of corn further than S., by changing the routing of the corn, without notation on the bill of lading, did not become an insurer of its arrival in good condition at P.

2. CARRIERS ⇐116 — CONNECTING CARRIER'S DELAY IN TRANSPORTATION PROXIMATE CAUSE OF INJURY TO SHIPMENT.

Where the proximate cause of injury to a carload of corn was the failure of one of the railroads which carried it to comply promptly with the request of the original consignee of the car to carry it to another point than it was originally billed to, which resulted in a delay of about one month, the railroad was liable as for a breach of its undertaking to transport to a new destination and make delivery within reasonable time, as evidenced by the bill of lading issued to the original consignee by its agent.

3. CARRIERS ⇐47(2)—CARRIER ATTEMPTING TO PERFORM UNAUTHORIZED CONTRACT BY AGENT LIABLE FOR INJURIES BY DELAY.

Where a railroad's agent exceeded authority in issuing bill of lading purporting to bind the road to transport over connecting lines property it had not and never afterwards acquired possession of, but the road, by attempting to perform, adopted its agent's act, it was liable for damage resulting from negligent failure to transport and deliver within reasonable time.

On Motion of the Missouri, K. & T. Ry. Co. of Texas for Rehearing.

4. CARRIERS ⇐47(2)—AUTHORITY OF AGENT OF CONNECTING CARRIER TO ISSUE BILL OF LADING DETERMINED.

It was within the scope of the authority of a railroad's agent to issue a bill of lading binding it to take up a carload of corn from its connecting carrier and to continue the carriage from its destination under bill of lading issued by the original carrier to a new destination.

5. CARRIERS ⇐69(2)—SEEKING RELIEF BECAUSE OF MISTAKE, MUST PLEAD IT.

To have entitled a railroad company to relief, against its contract to transport a carload of corn, on the ground of mistake, the road must have set up such mistake in its pleadings.

Hodges, J., dissenting.

Appeal from District Court, Collin County; F. E. Wilcox, Judge.

Suit by the Plano Milling Company against the Chicago & Great Western Railway Company and others, wherein J. G. Puterbaugh intervened. From judgment for the intervener, the named defendant and another appeal. Judgment affirmed in part; reversed and rendered in part.

This was a suit for damages, brought by the Plano Milling Company against the Chicago & Great Western Railway Company, the Atchison, Topeka & Santa Fé Railway Company, the Gulf, Colorado & Santa Fé Railway Company, the Missouri, Kansas & Texas Railway Company, the Missouri, Kansas & Texas Railway Company of Texas, the Houston & Texas Central Railway Company, and the Walker Grain Company, in which J. G. Puterbaugh, having purchased of said Plano Milling Company the claim forming the basis of its suit, intervened, and in which judgment was rendered as follows:   (1) That the milling company take nothing by its suit; (2) dismissing the Walker Grain Company, the Atchison, Topeka & Santa Fé Railway Company, the Gulf, Colorado & Santa Fé Railway Company, the Houston & Texas Central Railway Company, and the Missouri, Kansas & Texas Railway Company from the suit; (3) in favor of the intervener Puterbaugh against the Chicago & Great Western Railway Company and the Missouri, Kansas & Texas Railway Company of Texas for $1,292.35.   The appeal is by the two railway companies last mentioned.   The correctness of the judgment in so far as it denied the milling company a recovery and dismissed the Walker Grain Company, the Atchison, Topeka & Santa Fé Railway Company, the Gulf, Colorado & Santa Fé Railway Company, the Houston & Texas Central Railway Company, and the Missouri, Kansas & Texas Railway Company from the suit is not questioned by any of the parties to the appeal, and will be affirmed without respect to whether it is correct in other respects or not.

Facts as follows were found by the trial court:   February 24, 1912, the Burke Grain Company of St. Joseph, Mo., delivered to the Chicago & Great Western Railway Company at that place a car of corn it (the grain company) had sold to the Walker Grain Company of Ft. Worth, Tex.   The railway company at the same time delivered to the Burke Grain Company a bill of lading, showing the corn to have been "consigned to the order of said Burke Grain Company at Sherman, Tex., notify Walker Grain Co."   The routing of the car specified in the bill of lading was over the Missouri, Kansas & Texas Railway from Kansas City to Sherman.   In compliance with a request of the Burke Grain Company made February 27, 1912, the Chicago & Great Western Railway Company changed

the routing of the car, delivering same to the Atchison, Topeka & Santa Fé Railway Company at Kansas City, instead of to the Missouri, Kansas & Texas Railway Company, for transportation to Sherman. The change in the routing of the car was not noted on the original bill of lading covering it, but the Atchison, Topeka & Kansas Railway Company took charge of it solely because requested to do so by the Chicago & Great Western Railway Company. The corn was carried from Kansas City over the Atchison, Topeka & Kansas Railway, the Gulf, Colorado & Santa Fé Railway, and the Houston & Texas Central Railway to Sherman, where it arrived March 12, 1912. A draft by the Burke Grain Company for the purchase price of the corn, attached to the bill of lading issued by the Chicago & Great Western Railway Company when presented to the Walker Grain Company by a Ft. Worth bank, was paid by the grain company, but when it was so presented and paid does not appear from the record, except that it must have been on or before February 29, 1912, for on that day the Walker Grain Company presented the bill of lading to the agent at Ft. Worth of the Missouri, Kansas & Texas Railway Company of Texas, with a request that the car of corn be forwarded to Plano, Tex. Said agent thereupon took up said bill of lading, and issued to the Walker Grain Company in lieu thereof the bill of lading of the Missouri, Kansas & Texas Railway Company of Texas calling for the delivery of the car of corn at Plano, Tex., "to the order of Walker Grain Company, notify Plano Milling Company, Plano, Tex." Across the face of this bill of lading a notation as follows was written: "Issued in lieu C. G. W. St. Joseph B/L dated 2/24. The Walker Grain Company attached a draft on the Plano Milling Company for the amount of the purchase price of the corn to the bill of lading issued by the agent of the Missouri, Kansas & Texas Railway Company of Texas, as stated, which was paid by said milling company when presented to it by a bank in Plano. Immediately on arrival of the corn in Sherman March 12, 1912, the agent there of the Houston & Texas Central Railway Company notified the Walker Grain Company of the fact, whereupon the grain company notified the Missouri, Kansas & Texas Railway Company of Texas that the corn had reached Sherman, and requested it to take up the matter with the Houston & Texas Central Railway Company and have the corn delivered at Plano. The car of corn was finally transported from Sherman to Plano, where it arrived April 13, 1912. It was then found to be so damaged as to be almost worthless. It was promptly unloaded by the milling company and sold for its value. "The corn in question," quoting the language of the court, "was good sound corn, but on account of inherent mois-ture in the corn, it being the germinating season of the year, the corn would begin to heat, and where in 15 days after being unloaded in a closed car, and if kept in a closed car longer than 15 days, it would begin to heat and mold and damage, and would be practically worthless within 10 days after the deterioration commenced." If it had been transported over the Missouri, Kansas & Texas Railway as routed in the original bill of lading, the corn would have reached Plano within 10 days after it left Kansas City; but moving as it did over the Atchison, Topeka & Santa Fé Railway and its connections, it required about 15 days for it to reach Plano. The evidence did not show whether the corn was in good condition when it reached Sherman or not, but indicated that it had probably begun to heat. The corn was never in the possession of the Missouri, Kansas & Texas Railway Company of Texas. The failure to locate the corn at Sherman sooner than it was located there was due to the fact that it was expected, when it reached Texas, to move over the line of the Missouri, Kansas & Texas Railway Company of Texas, and neither the milling company nor the agent at Plano of the Houston & Texas Central Railway Company knew that the routing of the car had been changed until about 30 days after its arrival at Sherman. "The wrongful and negligent act," the trial court found, "of the Chicago & Great Western Railway Company in having and causing said shipment to be diverted without noting the diversion upon the original bill of lading was the proximate cause of the delay in delivering the car in question at Plano, Tex., and the proximate cause of said grain becoming heated and rotten." The Missouri, Kansas & Texas Railway Company of Texas did not by a sworn plea deny the authority of its agent at Ft. Worth to issue in lieu of the original bill of lading the bill of lading he issued to the Walker Grain Company. The failure of the Chicago & Great Western Railway Company to note on the bill of lading it issued the change in the routing of the car of corn caused the Missouri, Kansas & Texas Railway Company of Texas to issue the bill of lading to which the Walker Grain Company attached its draft on, and which was paid by, the milling company. On facts found by him as recited, the trial court concluded: (1) That the Missouri, Kansas & Texas Railway Company of Texas should not be held to deny liability on the ground that it never had possession of the corn; (2) that the Chicago & Great Western Railway Company by reason of its negligence and wrongful act in changing the routing of the corn without noting the fact on the bill of lading it issued, "became an absolute insurer of the arrival of the corn in good condition"; (3) that the intervener, Puterbaugh, as the assignee of the milling company, was

entitled to recover of both the Chicago & Great Western Railway Company and the Missouri, Kansas & Texas Railway Company of Texas as prayed for in his petition.

Wallace Hughston, of McKinney, and Dinsmore, McMahon & Dinsmore, of Greenville, for appellants.

G. P. Brown, M. W. Muse, and L. C. Clifton, all of McKinney, Lee, Lomax & Smith, and Slay, Simon & Smith, all of Ft. Worth, Terry, Cavin & Mills, of Galveston, and J. E. Whitehead, of Oklahoma City, Okl., for appellees.

WILLSON, C. J. (after stating the facts as above). [1-3] When all the facts found by the trial court are kept in mind, we think it sufficiently appears that the judgment is erroneous so far as it is against the Chicago & Great Western Railway Company. The theory upon which the trial court held that company to be liable was that it "became an absolute insurer of the arrival of the corn in good condition, by reason of its negligence and wrongful act in making the diversion of the shipment without noting same upon the bill of lading." It may be conceded, without deciding the question, that the court's conclusion was correct if he meant that the Chicago & Great Western Railway Company, because of its default in the particular specified, became an insurer of the arrival of the corn at Sherman in good condition; still judgment should not have been rendered against that company, for the court expressly found that the evidence was "insufficient to show whether the corn reached Sherman, Tex., in good condition or not." But if the trial court meant that the Chicago & Great Western Railway Company by changing the routing of the corn became an insurer of its arrival in good condition at Plano, Tex., we think the conclusion was plainly erroneous; for that company never undertook to transport the corn further than Sherman, Tex. We have found nothing in the record which supports the contention of appellee Puterbaugh that said railway company was liable to him for injury to the corn after it reached Sherman, and after the Houston & Texas Central Railway Company, in compliance with the instruction in the bill of lading, had notified the Walker Grain Company of its arrival there. After such notice was given, it can hardly be contended that the failure of the Chicago & Great Western Railway Company to note the change of routing in the bill of lading was a proximate cause of injury thereafter accruing to the corn because of delay in transporting it to Plano. For that delay, it seems from the findings, the Missouri, Kansas & Texas Railway Company of Texas was responsible; for the Walker Grain Company, having, as stated above, been itself promptly notified by the Houston & Texas Central Railway Company of the arrival of the corn at Sherman, shortly thereafter notified that company (the Missouri, Kansas & Texas Railway Company of Texas) that the corn was at Sherman, and requested it to take up with the Houston & Texas Central Railway Company the matter of having it transported to Plano. Why the Missouri, Kansas & Texas Railway Company did not promptly comply with the request of the Walker Grain Company does not appear from anything we find in the record. It was due to its failure to so comply therewith, it seems, that the corn remained stored in the car at Sherman so long, and its being so stored, it reasonably appears from the findings, was the cause of the injury it sustained. Such failure and the consequent delay of about one month in the transportation of the corn from Sherman to the nearby town of Plano it seems to us was plainly a breach of the undertaking to transport the corn to said town and there deliver same to its owner within a reasonable time, evidenced by the bill of lading issued to the Walker Grain Company by the agent at Ft. Worth of said Missouri, Kansas & Texas Railway Company of Texas. Why, then, should not said railway company have been held to be liable to the owner of the corn for the consequences to him of such breach? The reason advanced by said railway company in its brief is that it was not its undertaking. In support of that contention it insists that its said agent acted without the scope of his authority as such when he issued the bill of lading, because it had not then acquired possession of the corn. It is not necessary to determine whether the contention would be tenable or not (said railway company never having acquired possession of the property) if the suit was one for damages for a conversion of the corn; for, plainly, it was not that kind of a suit. It was, instead, a suit for damages for delay in transporting the corn to Plano, whereby, it was claimed, it was injured. It may be conceded, without so determining, that the agent at Ft. Worth of said railway company exceeded his authority as such when he issued the bill of lading purporting to bind it to transport over its own and connecting lines from Ft. Worth to Plano property it had not then and never afterward acquired possession of; still the fact remains, it reasonably appears from the findings, that said railway company adopted, by attempting to perform, the undertaking by its said agent on its behalf; for the corn *was* transported to Plano, and the cost in freight charges for carrying it there was demanded of and paid by the milling company. Now, if said railway company had a right to repudiate the contract of its said agent in its

behalf, it did not have a right, affirming same and undertaking performance thereof, to thereafter claim exemption from liability to the owner of the corn for the consequences to him of its negligence in such performance.

Perhaps in fairness it should be added here that the statement that the carriage of the corn to Plano was in performance of the undertaking evidenced by said bill of lading is not based on a specific finding by the court to that effect, but on the fact that the carriage of the corn to that town is not otherwise accounted, for in the findings the court made. So far as anything in the record shows to the contrary, it was not pretended at the trial that any one else than said railway company ever undertook to carry the corn, or have same carried, to Plano. Therefore we think a fair, if not a necessary, inference from the findings is that the corn was carried to Plano at the instance of said railway company in an attempt by it to comply with the undertaking evidenced by said bill of lading. So construing the findings, there can be no doubt, we think, that the conclusion of the trial court based thereon, to wit, that said railway company was. not entitled to be heard to deny liability for injury to the corn, was warranted. 2 C. J. pp. 489, 490, 492, 493, et seq.; 21 R. C. L. pp. 927, 932.

The judgment will be affirmed so far as it is against the Missouri, Kansas & Texas Railway Company of Texas, and so far as it is in favor of parties specified in the statement above; and it will be reversed so far as it is against the Chicago & Great Western Railway Company, and judgment will be here rendered that appellee Puterbaugh take nothing as against it.

### On Motion of Missouri, K. & T. Ry. Co. of Texas for Rehearing.

[4, 5] We are not sure, after a re-examination of the record in connection with the motion, that the contention of the Missouri, Kansas & Texas Railway Company of Texas that neither the pleading nor the evidence warranted an affirmance of the judgment against it on the ground stated in the opinion should not be sustained; but as we have concluded that, if it should be, the judgment against said appellant nevertheless should be affirmed on another ground, the motion will be overruled. When the record was first before us we were inclined to think the case was within a rule, recognized by many courts, which denies to the agent of a carrier authority to issue a bill of lading covering goods the carrier has not actually received. 10 C. J. 197. Further consideration of the record has convinced us that that rule should not be applied to the case. It was, we think, within the scope of the authority of the Missouri, Kansas & Texas Railway Company of Texas' agent to issue a bill of lading, binding it to take up the corn from its connecting carrier and continue the carriage thereof from Sherman (its destination under the bill of lading issued by the Chicago & Great Western Railway Company) to Plano. We think it will not be denied that had there been no change made in the routing of the corn, and had it been carried over the Missouri, Kansas & Texas Railway Company's line of railway from Kansas City to the point where it connects with the Missouri, Kansas & Texas Railway Company of Texas, the latter would have been bound by the undertaking on its behalf evidenced by the bill of lading in question. Railway Co. v. Grain Co., 206 S. W. 126. If that is so, then the bill of lading was not within the rule of law referred to, and if the Missouri, Kansas & Texas Railway Company of Texas was not liable as determined by the trial court it was not because its Ft. Worth agent was without power to bind it by such a contract, but for some other reason. The only other reason suggested by the findings of fact made by the trial court (there is no statement of facts with the record) is that the bill of lading in question was issued as the result of a mistake on the part of said agent of the Missouri, Kansas & Texas Railway Company of Texas at Ft. Worth, and on the part of Mr. Walker of the Walker Grain Company, or as to the routing of the corn from Kansas City. To have entitled the Missouri, Kansas & Texas Railway Company of Texas to relief against the contract on that ground it must have set up such mistake in its pleadings (2 Abb. Trial Brief, p. 1496; 1 Abb. Trial Brief, p. 596), and it did not.

HODGES, J. (dissenting). No complaint has been made by the appellee of the judgment rendered in this court upon the original hearing, and the only questions to be now considered are those presented in the motion for a rehearing by the Missouri Kansas & Texas Railway Company of Texas, who, for convenience, will be hereinafter referred to as the appellant.

The material facts have been very clearly stated by Chief Justice WILLSON in his original opinion. I differ with my Associates only as to the legal conclusions that should be drawn from those facts. Since it has been determined that neither the pleadings of the appellee nor the facts as found by the court warrant the conclusion that the conduct of the agent of the appellant had been ratified by an effort on the part of the appellant to transport the car of corn to Plano, I am of the opinion that the judgment as to that company should be reversed. As we now view the record, the liability of the appellant de-

pends upon its being estopped to repudiate the action of its agent in issuing the supplemental bill of lading referred to at the instance of the Walker Grain Company. We know judicially that the Missouri, Kansas & Texas Railway Company and the Missouri Kansas & Texas Railway Company of Texas, the appellant in this suit, are two separate and distinct railway corporations, the latter operating in Texas, and the former outside of this state; that they are parts of a great railway system engaged in interstate commerce, and connect with each other at Red River, a few miles north of the city of Sherman. We also know judicially that the Houston & Texas Central Railway Company operates a line of railroad through Plano, but that Plano is not touched by the appellant's line.

After alleging the issuance of the original bill of lading by the Chicago & Great Western Railway Company routing the car of corn involved in this suit over the Missouri, Kansas & Texas Railway system, the appellee pleads as follows:

"That the defendant Missouri, Kansas & Texas Railway Company of Texas accepted the terms and conditions of said contract so made by the defendant Walker Grain Company with this plaintiff, and agreed to participate therein by transporting over its line of road the said car of corn from Red river on the northern boundary line of Texas to Sherman, Tex., and thence on to Plano, Tex., over the line of the defendant Houston & Texas Central Railroad Company; that the defendant Missouri, Kansas & Texas Railway Company of Texas accepted and retained the said bill of lading so delivered to it by the defendant Walker Grain Company, and did issue and deliver to defendant Walker Grain Company another bill of lading in lieu thereof and as an amendment thereto, by which the defendant Missouri, Kansas & Texas Railway Company of Texas acknowledged that the said car of corn was in its possession and under its control at the time, and by which bill of lading it agreed to transport the said car of corn from its northern terminus, Red river, to Sherman, Tex., and thence on to Plano, Tex., and there deliver it to the defendant Walker Grain Company, or its assigns, under the said bill of lading. That the said supplemental bill of lading so issued by the defendant Missouri, Kansas & Texas Railway Company of Texas was likewise a negotiable instrument, and the same was by the defendant Missouri, Kansas & Texas Railway Company of Texas placed in the hands of the defendant Walker Grain Company and made subject to being negotiated by it."

It is not alleged that the car of corn was ever in the possession of this appellant, and the court finds as a fact that it was not. As ground for recovering against the appellant the appellee alleges as follows:

"That by reason of the defendant Missouri, Kansas & Texas Railway Company of Texas having issued its supplemental bill of lading covering said car of corn, and having delivered the said supplemental bill of lading, which was a negotiable instrument, to the Walker Grain Company, the said defendant Missouri, Kansas & Texas Railway Company of Texas did thereby assist and enable the defendant Walker Grain Company to collect from this plaintiff the price of said corn, to wit, the sum of $974.83, and did enable the defendant Houston & Texas Central Railroad Company to collect from this plaintiff said freight amounting to $197.42; and the said defendant Missouri, Kansas & Texas Railway Company of Texas is therefore estopped to now assert that it never received the said car of corn, and that it never had the same in its possession, and that by reason of its failure to deliver the said car of corn according to the terms of its said supplemental bill of lading to this plaintiff it thereby became and is now liable to this plaintiff for the amount of its loss and damage, to wit, $1,172.25."

It is thus made to appear that the only ground for holding the appellant liable in this suit is that it is estopped to now repudiate the action of its agent in issuing the supplemental bill of lading and deny that it ever had possession of the car of corn.

It is clear that if this supplemental bill of lading had never been issued, the only material facts being the same, there could be no pretense for holding the appellant liable in this suit. It had nothing to do with the issuance of the original bill of lading by the Chicago & Great Western Railroad Company, or with the change in the routing thereafter made, and therefore owed no duty toward the shipment, contractual or otherwise. Hunter v. Southern Pine Lumber Co., 76 Tex. 195, 13 S. W. 190; 4 Elliott on Railroads, § 1433. The controlling question, then, is, Do the facts show conditions which should estop it from interposing the defense that the car of corn was never in its possession and that the supplemental bill of lading was issued without authority by its agent? A bill of lading is construed to be both a receipt for the goods described in it and a contract of carriage. Cohen Bros. v. M., K. & T. Ry. Co., 44 Tex. Civ. App. 381, 98 S. W. 437; G., C. & S. F. Ry. Co. v. Lowery, 155 S. W. 992. As a receipt it is prima facie, but not conclusive, evidence of what it recites. While some courts have held that when a bill of lading passes into the hands of an innocent holder the issuing carrier is estopped to deny that it had received the goods and thus escape the consequence of damages of delay, the great weight of authority in this country is to the contrary. Friedlander v. Texas, 130 U. S. 424, 9 Sup. Ct. 570, 32 L. Ed. 994; The Carlos F. Roses, 177 U. S. 665, 20 Sup. Ct. 803, 44 L. Ed. 933; 4 Elliott on Railroads, §§ 1418, 1419; 1 Hutchinson on Carriers, §§ 160, 161. An ordinary bill of lading is not negotiable in the sense in which that term is applied to commercial paper, such as notes and bills of

exchange. 1 Hutchinson on Carriers, § 175. It is assignable only, and its assignment is accompanied with all of the conditions common to nonnegotiable instruments under the law merchant. Therefore the appellant had a right to plead any defense against the appellee which it might have urged had this suit been prosecuted by the Walker Grain Company, the original holder of the bill of lading, and who was familiar with all of the facts attending its issuance. Our statute seems to recognize the nonnegotiability of ordinary bills of lading in providing a method by which they may be certified and validated so as to be conclusive in the hands of third parties. Articles 715, 719, and 724, Rev. Civ. Stat. This bill of lading had not been certified or validated in the manner pointed out in these articles. But it is said that the appellant cannot in this suit avail itself of that defense, because it did not plead a mistake in issuing the supplemental bill of lading. This is not a case in which that rule of pleading is applicable. The agent who issued this bill of lading knew that the goods were not in the possession of the railroad company for which he acted; and the Walker Grain Company, to whom it was issued, was also cognizant of that fact. There can therefore be no mistake in a transaction where the parties did the thing they intended to do. But if it should be held otherwise, the appellant did plead that the bill of lading was issued without authority because the goods described in it were not in fact received by it at the time the instrument was issued, or any time thereafter. Furthermore, the pleadings of the appellee state facts which clearly show that the bill of lading was issued by the appellant's agent upon the mere presentation of the original bill of lading issued by the Chicago & Great Western Railroad Company and while the goods were in transit over another route. There was therefore no occasion for the appellant to plead facts which had been sufficiently stated in the plaintiff's pleadings.

It has been held by one of our Courts of Civil Appeals that a defense of this character may be interposed on a general denial. Cohen v. M., K. & T. Ry. Co., supra. If the appellant may show that it did not receive the goods and that the bill of lading was issued without authority, the entire instrument is a nullity, and cannot be invoked for the purpose of holding the appellant liable for the failure to transport the goods to Plano. It is no argument to say that appellant's agent did have authority to make a contract binding his principal to receive the goods when tendered by its connecting carrier and transport them to Plano, for that contingency never happened, and that portion of the contract, if valid, never took effect. I am therefore of the opinion that the judgment in this case as to the appellant should be reversed and rendered.